Hello, this is Elizabeth White. Good morning, counsel. Thank you for calling in. I believe both counsel are on the line now for the petitioner and the real party in interest. Yes, Larry Klayman here. Okay, well this is Judge Fletcher presiding by telephone, so I gather we have both Mr. Klayman and Ms. White here on the line, and we have all of three judges here, although it's a minute or two before 11, we might as well begin. Mr. Klayman, it is you who is seeking the writ of mandamus, so we'll have you go first. We're not going to – we're going to want to make sure we consider this as fully as we need to. Why don't we – I anticipate the possibility – why don't we start with the notion of 15 minutes per side, so if you can put 15 minutes on your clock and save a few minutes for rebuttal, and then once you finish, we'll hear from Ms. White. Mr. Klayman? Yes, thank you, Your Honor. The lawsuit, the criminal indictment rather, against my client, Cliven Bundy, has been pending for nine and a half months. The case is scheduled to go to trial on the 6th of February. That's only about three and a half months away. At the outset of this case, Cliven Bundy retained me to defend him. I am a criminal defense lawyer in large part. I do other things, obviously. I'm the founder of Judicial Watch and Freedom Watch. I do a lot of public advocacy. This is Judge Fletcher. Can I interrupt? You said at the outset of this case and when Cliven Bundy retained you, could you give me the date at which Mr. Bundy retained you and then the date at which you sought ProHackVice admission? We first talked in February, and I sought through then-local counsel, Joe Hanson, ProHackVice entry shortly thereafter. No, I didn't ask when you first talked with Mr. Bundy. When did Mr. Bundy first retain you? Around the time that we filed the ProHackVice application. And what was that date? I don't have that with me right now, Your Honor. I'm actually out of the office. I'm very grateful that you would hold this thing quickly. Okay, no, I can find that date in the record. Okay, thank you. Yeah, okay, I appreciate it. I'll show him a cell phone, regrettably. The issue here is that we're in a criminal proceeding. The bar is quite high with regard to not allowing counsel in in a criminal proceeding. I've been a member in good standing of various bars for 40 years. I've been practicing for 40 years. I've never been suspended per day. The basis upon which Judge Navarro denied my application, ProHackVice, and it's the sole basis on the record, at least she did so twice, was that there's a disciplinary proceeding pending in the District of Columbia, which was started by my former public interest group, that's why I mentioned it, Judicial Watch, the directors who I've been litigious with for many years. In fact, I obtained a judgment against them for libel in a public figure, and that's pretty tough to do if you're not liable. And the case has sat around the disciplinary proceeding for nearly 10 years. I have an expert, one of the premier experts in ethics, Professor Ronald Rotunda, who has testified that I didn't do anything wrong. There was a negotiated discipline that was withdrawn, so any reference to an affidavit by the rules of the District of Columbia bar are implicable. And even if it was... Mr. Quayman, this is justified to you. So the two things that you provided to the court in response to the court's first order in March of 2016, she came up with the affidavit that you signed, which was stamped June 23, 2014. The same day, stamped with the same day, was the joint petition to the D.C. Bar, and both of those Judge Navarro provided and felt that you had not been forthcoming. You issued then a response to her, which explained that you had withdrawn your affidavit and it was no longer effective. In response to this court's order for the parties to provide additional briefing, Judge Navarro came up with two additional documents. One is the hearing before the D.C. Bar Committee, which was October 30, 2004, about four months after the affidavit and petition that she had previously identified. Then there's also a January 13, 2015 order from the Hearing Commission stating that they would not accept the affidavit and petition because they didn't feel that the sanction there, which was public censure, was severe enough. You did not provide those documents to the court, did you? I did not. Because, Your Honor, they were of no enforcement effect. If you look at the rules of the District of Columbia Board of Professional Responsibility, I withdrew that. And, in fact, the affidavit or other documents... The order of the Hearing Committee is D.C.'s view of the affidavit. So your affidavit from Professor Rotunda, your letter obtained from Professor Rotunda, is very powerful. But it only represents your side of what's going on in D.C. There were other official proceedings subsequent to the documents that Judge Navarro had identified. Yet you didn't provide those to the court when you had an opportunity to do so. I was... Actually, Your Honor, respectfully, I was not required to produce them because what I said was it was in progress. Any recommendation... That was only for the purpose of going forward with regard to any particular disciplinary action. They made that preliminary finding. That's not a finding. If you go back and look in the records, it's not a finding that I did anything wrong. It's a matter of the merits. It's just a pinpoint that they go to the next point. You also represented to the court, based on the letter obtained from Professor Rotunda, that you were likely to prevail. At the same time, you knew that there was an order from the Hearing Commission, the Hearing Committee, again, the January 2015 order, suggesting that D.C. had taken a very different view of this. Why, in the interest of full disclosure, did you just provide that to Judge Navarro and say, D.C. Barr put a different view, but Professor Rotunda supports me, I think we're going to be vindicated? Well, first of all, I don't feel that I had to do that, Your Honor, in all due respect. Of my opinion, I'm going to be vindicated. This is just the Hearing Committee that makes a recommendation. It is not the findings of the D.C. Court. If you go back and look at the rules, that is not a finding. That's simply a recommendation, and I'm entitled to appeal it. And the Bar Council is entitled to appeal any finding. And then whatever the board rules goes up to the D.C. Court of Appeals. So that was not a finding. And I honestly believed that I was going to be exonerated. But let's go back a little bit here in terms of this argument. Let's say, in fact, that they do find something after all these years. And the issue is, I defended three individuals, an employee of Judicial Watch, a donor who was defrauded out of $15,000 to buy a building, and an individual who was supposed to be defended by Judicial Watch who was abandoned, and wound up spending 10 years under house arrest. I thought I had an obligation, an ethical obligation, to do so. And Professor Rotunda makes reference to that. I feel that I have done nothing wrong. In fact, with regard to that affidavit, I thought I shouldn't have done that. I was just trying to get rid of it. I was very, very busy at the time, and I decided to withdraw it. And under the rules, there is nothing that's in effect currently in terms of any discipline towards me. And even if there were, I cited a number of Supreme Court cases. I mean, it has to rise to the level of disbarment to keep someone out of a criminal case. That's Supreme Court precedent. I can give you all the citations, but they're in the reply brief and the earlier brief. Clyven Bundy has a right to counsel of his choice. He doesn't have counsel right now. Local counsel Joel Hansen had to withdraw based on health reasons. His rights have been prejudiced. And Judge Navarro, you know, in all due respect to her, and I do respect her, in all due respect, she denied the application without prejudice. It was, in fact, a catch-22. When the D.C. Board rules and when all appeals are heard, Mr. Clayman, when you're exonerated at the end, if you're exonerated, you may apply. Now, the Clyven Bundy is going to be, potentially, without counsel, to be sentenced to life imprisonment before this matter is ever concluded. And it won't be concluded for years. And I steadfastly stand by the position. I did nothing wrong. I did nothing unethical. I've been a member of the Bars and Bids standing for 40 years. Those certificates were submitted to the judge. And what she's done now, with regard to her answer, was to move the vote votes back because you've asked her for an explanation of what's going on. But as a matter of law, Clyven Bundy deserves to have counsel of his choice. Now, I'm a strong advocate. I made a passing reference. I don't equate myself with John Adams. You know, I would never do that. I'm not of that caliber. I'm not a founding father. But, you know, he also defended unpopular causes. Mr. Clayman, can I interrupt? This is Judge Fletcher. You said that the sole ground that Judge Navarro had for denying your Pro Hac Vitae application was this pending disciplinary proceeding. I'm not sure I read the record in her decision that way, particularly once I understand, given her submission in response to our asking for briefing, there are a lot of things in your background that clearly troubled her. And it appears to me that what she was saying was, in light of all of this, I do not want to go forward with a Pro Hac Vitae grant. I will, however, do so if the disciplinary proceeding in D.C. can be completed. That's different from saying that the only ground on which I am denying the whole Pro Hac Vitae is dependency of the disciplinary proceeding. How would you respond to that? Well, let me be candid with you. Candid? I'm a lawyer. No, I'm speaking from my heart now. I've been a lawyer for 40 years. I have had differences with a few judges in those 40 years. I have. I stand up for my clients. I'm willing to take the heat. In 40 years, that's not a lot. Well, I have to say... She misinterpreted. Excuse me. May I interrupt, Mr. Klayman? You say you stand up for clients in 40 years and so on. It's unusual, to say the least, to have two judges saying, you may never appear in my courtroom again. I can take more than 15 minutes and explain the concept of that. Okay, Judge Keller, that this court was well aware of has a history of making remarks that are intemperate and have been found to be, by this very court, to be prejudicial and even overturned. With regard to Judge Chin, when he was following what Keller had done, I had just uncovered the Chinagate scandal. And it was very controversial at the time. He was Chinese. I had learned that... And I represent Chinese and also have great respect. I'm an international lawyer of origin. It was mostly foreign clients. And I had asked him whether or not he had contact with an individual by the name of John Wong over me. And he claimed that was a racist remark because I simply asked a question. Now, it's not my fault that some judges will react. I mean, I'm engaged in representation, which is very strong and sometimes very controversial. And I've had a few instances in a couple of years. I did, you know, in all the years I've been practicing, and I did disclose that. And I'm not ashamed of it. It is not a reason to keep me out when Clyde and Fundy want me as a defense counsel. And the effort I was made against John Adams is that he would have lost his practice over what he did. He never would have been a granted pro-hypocritic status in those years. Well, now we have Supreme Court precedent that says that I have to be the worst person on earth to be kept out of defending Clyde as he wants me. And it's now taken nine and a half months. He has no counsel currently. And we do would like to get local counsel, but he's entitled under the cases that I author-cited to have out-of-state counsel who has experience here. Anybody who knows me knows that I'm an ethical person and knows that I believe in the rule of law, and I respect you, and I respect your court. And I believe that you're the check to the tyranny by the other two blank branches of government. And I might add also that Judge Navarro at the outset misinterpreted what was going on. She thought that the negotiated discipline had gone through. Well, it didn't. It was withdrawn. But again, I reiterate that even if ultimately, and I don't think I will be, counsel has done anything wrong in the end, but that's going to be years down the line. Clyde and Bunny deserve to have counsel of their choice. This is like imprisonment. This is not a civil suit where she has this broader discretion. This is criminal prosecution. And Clyde and Bunny has not had counsel. Excuse me. Judge Gould has a question. Judge Gould, if I could just interject. If you were admitted for PJ, would you abide whatever orders were given by the district court judge that relate to the orderly administration of justice? Absolutely. And that's a point I was going to make, too, is that Judge Navarro has the authority, once I'm in the case, to administer to this case and to take any action, if appropriate. It's, in her opinion, with backed up evidence. I'd do anything wrong. So I'm totally in effect at her mercy once I'm in the case. But I haven't done anything wrong. And in this country, we're innocent until proven guilty. You've used them before. Yes. And I would abide by her administration of justice here, of course. We've used up about 15 minutes. Why don't we hear from Ms. White, and then we'll give you a chance to respond, Mr. Klayman. Thank you. Thank you. Good morning. And may it please the court, Elizabeth White for the United States. I do want to take issue with this idea that the chief judge's initial denial of the promo PJ application was based solely on the existence of a disciplinary proceeding in the District of Columbia. As I read that, the written order is fairly clear that the court was concerned not simply with the existence of that proceeding, but with what the court found to be petitioner's attempt to mislead the court about the status of that proceeding. And I think that's a different and more serious question. What the petitioner had said in his petition is that there's a disciplinary proceeding before the board, and the matter is likely to be resolved in my favor. And the chief judge said, well, wait a second here. I have this affidavit that you signed admitting to these three violations. And I have this petition for a negotiated discipline where you're agreeing to a public censure as a sanction, or where you agreed. And it does seem a little bit unclear whether she actually thought that this was a done deal, because she said that this was resolved in the petition that says that this is resolved. And so what she said is, so I'm concerned about attempts to mislead the court, and so I'm going to deny your petition without question. And you can file a new petition, if you'd like, for Cromartie J. And if you do, here are some things I want you to include. Now, instead of doing that, petitioner filed this subsequent pleading, which the court construed as a motion for reconsideration. And I think that in that motion for reconsideration, or the pleading that the court construed that way, petitioner made additional representations about the status of this disciplinary proceeding in Dixie, including saying, well, I was going to negotiate this resolution, but I thought better of it, because I decided I didn't do anything wrong, and clearly implied that he withdrawn his affidavit and the negotiated discipline. But just in light of what was attached to the district court's invited answer to this court to the mandamus petition, it looks to me, and perhaps there's something that's unclear here in the fact, but it looks to me like it's not that the petition was withdrawn. It's that the petition was rejected by the hearing committee in the District of Columbia,  too lenient. And so as I know it in the government's response to the mandamus, petitioner had sort of suggested or implied to the district court that it had been withdrawn, but didn't actually say so directly. In his reply to this court, he did say so directly that it had been withdrawn. But when I look, yes? Such rules might get in effect. I just have a few questions relating to this. First of all, how can what a bar committee says without a formal determination by the bar be controlling on a matter as weighty as this? Thank you, Your Honor. And I think to me that the issue, in my view, is not what is going on in the DC proceeding. The issue, in my view, is whether the court acted within its discretion in being concerned that the court believes that the petitioner was misleading the court about what was happening. Right. I get that. Yeah. Yeah. I understand that, but still, on the question of abuse of discretion, don't we have to take into account the very severe penalties that Bundy is potentially facing and his need for skilled criminal defense counsel? I do. I think that, of course, Mr. Bundy should have skilled criminal defense counsel. There have been a number of hearings just in the last two weeks. So what then, counsel, I don't mean to interrupt you, but what is the current status of his existing criminal defense counsel with the case barreling towards a preliminary trial? There have been at least two, if not three, hearings in front of the magistrate judge with the judge. Initially, a few weeks ago, Mr. Bundy has suggested that he might want appointed counsel. There was a hearing at which he withdrew that and said, no, I don't want appointed counsel. And I believe that the magistrate judge made a finding that he wouldn't qualify for appointed counsel because of his absence. Last week, he was working to retain, and this was at the hearing, a local Las Vegas criminal defense counsel. My question, counsel, is specific. What is the current state of his representation? Is it that he does not have a criminal defense lawyer at this time? My understanding, and I'm sure Mr. Klamath will correct me if I'm wrong, his local counsel, Joel Hanson, had filed a motion to withdraw. Judge Lean asked for that not to take effect until a new counsel was appointed, and he's been negotiating with Brett Whittle. There was a hearing this morning at 1030, and Mr. Bundy, from what I understand from the trial prosecutor, asked until next Wednesday to negotiate with him to come up with an agreement with Mr. Whittle to represent him. OK, so at this date today that we're having this mandamus argument, Mr. Bundy has a counsel who's moved to withdraw and obviously isn't out there working hard to support Bundy, although he's doing whatever the court requires. And we also have another counsel negotiating to represent him, but not yet, who hasn't yet appeared for him. Is that right? I believe, and I'm sorry, I don't know the exact status because I know that Mr. Whittle has gotten extensions of time to file Mr. Bundy's pretrial motions. And so they had a hearing last week, and he said he was going to retain Mr. Whittle, and then they had a hearing this morning and he hasn't done it yet but wants to have until Wednesday to do that. So my understanding is that that is happening and should happen by next Wednesday. The court has extended the deadline. My final question, and I apologize, I don't want to burn the argument with just my questions, but does the United States government, which of course is steering the prosecution here, does it oppose Mr. Klayman being admitted? Because I thought that the brief I read from the government was somewhat equivocal on that. It said, on the one hand, we don't oppose it. On the other hand, let us tell you all these things about Mr. Klayman, which obviously presented an argument that he shouldn't be admitted. So what's your position today? The government is not taking a position on who should be permitted or not be permitted to represent Mr. Bunney. We really do believe that that is, the district court has to take into consideration all of these issues and make this determination, and that's within the court's discretion and this court's review. And frankly, I think the one thing we all agree on is that it would not be appropriate for the United States to say yes or no, this attorney should or should not be able to represent this particular criminal defendant in the prosecution that we're prosecuting. But the court asked us to respond, and so we responded with the facts, with our understanding of the facts and our understanding of the relevant law. And we want to be responsive to the court, but obviously we share the district court's concerns, the district court's goal of ensuring ethical and efficient administration of justice. But that is not really our decision to make, and in terms of the exercise of that discretion, it's not really our decision to weigh it up. Thank you. Now, either Mr. Klayman or Ms. White, I'm sure, can tell me this answer, and if I were to dig deeply enough in the record, I could learn it myself. How many defendants are there in this case? There are 19, Your Honor, it's my understanding. Nineteen. The government, Mr. Klayman, the government moved for a complicated case over the objections of the defendants ultimately. That was granted, so their speedy trial rights were not invoked. Thank you, Mr. Klayman. You responded quite appropriately, but we're still hearing from Ms. White. So, I guess, in the government's view, the issue here is not the existence of this proceeding, it's whether the court acted within its discretion and was reasonably concerned that the petitioner was attempting to mislead the court about that proceeding. And now, in response to this court's invitation to respond to the mandatement, the court made very clear that, in fact, she has many additional concerns. She talked about her grave apprehension upon review of numerous other court's descriptions about petitioners' ethical misconduct, and those issues were not developed below, possibly because the initial pleading, she made her ruling, and instead of filing a new Pro Hoc Vitae application, which she would have granted or denied and explained her reasoning, she filed something that was considered as a motion for reconsideration. Ms. White, can you... This is Judge Heide. Can you shed light on why the district court seemed disappointed, concerned, irked at the fact that Mr. Klayman didn't file a new application, but instead filed something called a renewed application? She treated it as a motion for reconsideration? Only that she had given instructions. I think that she has said she was denying this one without prejudice to file a new one, a new one which would presumably look like, which would be filed on this court-verified petition for permission to practice Pro Hoc Vitae and would have all the blanks and give him an opportunity to restate and correct any ambiguous or unclear things he had said in the first application. For whatever reason, so he asked the court to reconsider, and in that, as I said, there are a number of other representations about the status of the current disciplinary proceedings in the District of Columbia, including the statement that it had been withdrawn, which I can't square with the D.C. rules that say that a petitioner can withdraw them before the limited hearing, and after the limited hearing. I mean, the committee rejected it, so I don't know if petitioner is suggesting that he withdrew the petition after the hearing committee had rejected it, or, I'm not clear on that, but for whatever reason, the District Court concluded that nothing in that subsequent pleading caused her to reconsider her view, which was concerning. Is the government aware of any proceedings in the District of Columbia after the January 13, 2015 report? I believe there was, yes, there was a hearing, you know, the one that, and I, I'm sure Mr. Hines, The hearing was in October of 2014. Right. There was the report, I'll get the official title here. Yes, and then January of 2015. My understanding, just from, just from my review of these pleadings, my understanding is that what happened is the Bar Council and the petitioner submitted the request for a, for a negotiated disposition. That goes to a limited hearing. The limited, at the limited hearing, which was in October, and then in January, the hearing committee said, no, you're not going to accept this negotiated discipline. We're rejecting the hearing. We're rejecting the negotiated disposition. So that kind of backs everything up, and now you start with a full-blown adversarial proceeding. My understanding is there was a hearing on that, because he, Mr. Klayman, submitted his post-hearing brief, which I think was really just, maybe this spring, his post-hearing brief. Now, that post-hearing brief, at the very beginning of it, he does seem to acknowledge that there has been this initial, you know, preliminary view that the Bar Council approved these violations by fair and convincing evidence, but that is what he's arguing about. That's false. Okay, I'm sorry to interrupt. Mr. Klayman, you will have your chance on rebuttal. Please. Yeah, Mr. Klayman, I'll have the number of questions for you when Judge Fletcher gives you time. I'm sorry, I reacted to that because it was so false. Sorry. I have lots of questions for you, Mr. Klayman. I'll give you the full opportunity. So, Ms. White, then it's your understanding that something has been filed by Mr. Klayman in the District of Columbia Bar after January of 2015? Yes, and that was attached to, he actually attached that to this subsequent speaking in the District Court, but it's docket number 229, and let me just look. It's 229, and the post-hearing was submitted Let's see. I don't know if it's submitted. Let me go back. Did Mr. Klayman submit something to the District Court? It's to the disciplinary board, and it's dated March 2016, March 30th, 2016. Right. That's a docket. Is that something that Mr. Klayman has filed before the D.C. Bar or filed before the court? Before the D.C. Bar. The District of Columbia Board of Professional Responsibility Ad Hoc Hearing Committee, and that was a post-hearing brief and proposed findings of fact and conclusions of fact. Are you aware of any other documents, orders, hearings that have been conducted by the D.C. Bar since January 2015? I do not believe that I am. Actually, wait a second. No, I'm sorry. There was a hearing before the committee. This is just the first page of the introduction of this post-hearing brief that he filed, which is at docket number 229-1 in the District Court here. It says that there was a hearing before the committee January 26th, 27th, 28th of 2016, and this is the post-hearing brief that he filed, which is what he attached. So there was apparently a hearing in January of this year, and then he filed his post-hearing brief in March of this year, and I'm not aware of anything else. I haven't looked at anything beyond the things that have been filed in the District Court and in this court. Okay, and these things were before, this information was before the District Court? This post-hearing brief was attached to his motion for reconsideration. Okay. And that's docket number 229. Okay, do we have any further questions from Ms. White at this time? I guess I have a question for the government. Okay. Would you agree that it's in the interest of the United States government that Mr. Bundy have vigorous defense representation in this case? Yeah. Okay. Would you agree that given the magnitude of the case, that even if a superstar new defense lawyer from a Nevada bar stepped forward at this date, that it would be difficult for such a lawyer to fully get a handle on all the issues in the case before the February trial? Your Honor, I wouldn't feel competent to speak on that. I think that there's been quite a bit of litigation, but different defendants are filing motions and joining each other's motions, so I don't know how much, you know, obviously the district court will do what it needs to do in terms of extensions and that sort of thing, but I really don't feel competent to speak on that. And my final question is, does the government have, does the U.S. government have a reason to believe that Mr. Klayman in his statement to us today, that he would abide by the orders of the district court that relate to the administration of justice, that he's not being canned with us, or that that's a false statement? And I realize your position is this was an issue for the district court that we review for abuse of discretion, but my question to you, do you as a member, as a prosecution representative, feel that Mr. Klayman's statement to us today is not to be believed? I apologize for my delay. I think that that question put me in a difficult spot. I don't know Mr. Klayman. I know, I mean, I see the cases that I found, the cases that the district court found about the rulings that other district court judges have made in cases where he's appeared before them. I have no independent knowledge of anything that could inform that. I don't think, I don't think that I have a view. That's fine. I didn't mean to put you on the spot. To tell you the general concern with whether lack of representation by Mr. Klayman would be penny wise and pound foolish, but I guess that's up to the district court and to this panel to think of. I really do think that it is, and as I say, you know, we try to be responsive and give the court information that can be helpful, but at the end of the day, really, you know, our view of this is not important. I do want to just make one other point, though, because I think if you look at the district court docket, and I'm sorry that I don't have all of this information at my fingertips, but Mr. Hanson was representing Mr. Bundy and half that, and I think he still is until the issue with Mr. Whipple is resolved, but a number of things have been filed. I mean, there have been vigorous representation. It has been several weeks that the magistrate judge has been saying to Mr. Bundy, you need to find counsel, you need to find counsel, and they've had these hearings where he's been close to retaining Mr. Whipple, but then he needs a few more days, and now the hearing today, he's out here until Wednesday, and so I think, you know, I just don't want this court left with the impression that the only reason Mr. Bundy is in the predicament that he is in is that the district court, you know, denied his prosecution application because he has been, you know, the court has been urging him to get counsel, and there is, you know, counsel, but obviously the counsel choice issue is an important issue, and it does have a constitutional dimension, you know, subject to the limitation and that the district court has discretion to be concerned about the effective administration agenda. Okay, Ms. White, thank you very much. Now, the ordinary course of appellate argument, of course, is presentation, response, and rebuttal. It's now Mr. Klayman's turn. Depending a little bit on what's said and how long it runs, we may ask you for a response as well, but Mr. Klayman, now's your chance, and I'd like to begin with a question for you. This is Judge Fletcher. You answered Judge Gould's question as to whether or not you were prepared to abide by all the rulings and the standing orders and so on from the district court in this case, and you responded that you would. I'm reading from the district judge's response to the mandamus petition in which she references an order from the district court in Florida. Quote, plaintiff Klayman has routinely shown a disregard for this court's local rules The court continues that it, quote, had become quite frustrated with plaintiff's various tactics to avoid court rules throughout the course of this litigation. Unfortunately, the court learned early on in this case that this approach to litigation is the norm and not the exception for plaintiff. There are various ways to frame my question. I guess one way is to say, do you anticipate behaving differently in this case than you behaved in Florida? Yes. You know, I'm not going to blame anybody. I accept, you know, the good things I've done in my career, and I understand people's criticism from time to time. Like I said, I've been practicing for 40 years. Well, no, I'm asking about a year ago. Yeah, and what happened there, there were some late filings and things like that. I had an associate. I'm not blaming anyone on my team, but I let him go because there were late filings on that, and I think that's, in large part, what she's talking about. One time we filed a brief. It was 25 pages long. It should have been 20. Oh, please. No district judge will say that when there's an over-length brief by five pages. Well, you know, Your Honor, there's a... I'll be candid here in my own view. I am a very strong advocate. I take very strong positions, sometimes politically. Sometimes people don't like what I stand for no more than they like what John Adams stood for. And sometimes I get some blowback on that. So I accept that because, you know, I try to do what I think is right in my heart. So let me come back to the question I asked then. Do you anticipate litigating in any different manner in front of Judge Navarro than you litigated in the Florida case a little over a year ago? Yes, I will not miss deadlines. I will abide by the rules scrupulously, but I don't want to say that I personally did anything wrong there. I disagree with that. But, yes, I'm going to scrupulously abide by her rules and her filing deadlines and procedures. And let me address one other thing here, if I may, because what Ms. White brought up is very important. Number one, you know, there was a continued negotiation of discipline after the first one was not accepted, okay? So I did withdraw from that. So I wasn't in any way misleading anyone. I did withdraw. Well, when did you withdraw? After the hearing committee did not accept the first negotiated discipline, I continued to negotiate with bar counsel, and I decided I was going to withdraw from that negotiation. But you withdrew after the bar committee already told you that they wouldn't accept it. You know, I don't dispute that. I never said otherwise. I didn't misrepresent anything. But the new hearing committee was assigned to this. A new hearing committee with three different hearing officers. And before them was not any documentation under Board of Professional Responsibility rules, okay? So there has been no finding to date. And what's the most important thing is, and what I was leading to, is that Ms. White conceded that I gave Judge Navarro our post-hearing brief before the new hearing committee, which had a full recitation of what had occurred, of where we were to date, of everything that happened, with testimony from Professor Rotunda. And so it was a full disclosure to the district court. It was a very long brief with attachments. So nobody tried to hold anything back. So that brief was dated when? I don't have the date in front of me right now. It's a part of your record, Your Honor. Is it 2016? 2016. And the hearing committee has yet to render a decision on that. Okay. Has it been, have you filed any further documents, or has the bar filed any further documents after that brief? I filed a reply brief, but that was not accepted. And just because the rules didn't, I asked for leave, and they said, you don't need to file it. You don't have rules for reply briefs. And I did. That's not exact, Your Honor. Was there a response from the bar to your opening brief? There was. Okay. And you didn't file that with the district court? I'm not sure that it was available at the time that I filed it. I don't know. But I wanted to, my brief was complete. How come they believe you didn't have a copy of it? Your Honor, in all due respect, okay, I was not litigating the District of Columbia hearing in front of Judge Navarro. I was trying to give her a basis. I was trying to give her a basis of why I felt I would be dishonored. I was trying to do that. And that's a full and complete brief. And I would, you know, ask that Your Honor review it, because I was trying to say that I had a basis for my beliefs, that I was going to do something to honor me. That's why I gave it to her. And I wanted to bring her up to date on what had happened. I wasn't going to dump the entire record from the D.C. bar in front of her, because she's not the D.C. bar. She's not the board of professional responsibility. She's not the board of the field. The D.C. bar is going to make the ultimate decision. If we were to look at the docket of the D.C. bar proceedings, what was the last thing that was filed? My motion for leave to file a reply. Okay. There have been no developments since then. Correct. Correct. Correct. And there's a couple other important points I'd like to make. Is that the reason that the government wants this to happen both ways, they would prefer not to have me in the case. That's clear, okay, but they won't say that. Because if I'm not in the case, and Clyde and Bundy is convicted, the denial of right to counsel is a significant ground as a conviction overturned. So that's why they're trying to thread the needle here, and that's why Ms. White, and, you know, I know she's a person of integrity. That's why she doesn't want to say it one way or the other, but she's on instructions because they know that I'm a very strong advocate against the government, and I take strong positions, but I will abide by all the orders of Judge Navarro. I'm not here for myself. I'm here for Clyde and Bundy. If he takes his life, imprisonment. Now, I understand that. Mr. Klayman, let me ask you the following. I gather you filed a civil suit against Judge Navarro. Is that correct? I'm not counsel record on that case, no. No, are you a plaintiff? I'm not. That should have been pointed out. It wasn't. No, it was Mr. Hanson who was the signatory. I didn't sign that. I think my question was clear enough, but let me make it clear. Are you a plaintiff in a suit against Judge Navarro? I am a plaintiff. Well, that was actually, Hanson dismissed that with prejudice, actually without checking with Clyde and Bundy on that. But I am a plaintiff in that case. And is that case pending now? No, it's not pending. What's happened to it? It was voluntarily dismissed with prejudice. And so how long was that suit pending with you as a plaintiff against Judge Navarro? Months. Months. And I think, Your Honor, that's a good point here. Well, no, I'm not yet finished. My question is based on this. It's an unusual thing, to say the least, for a lawyer appearing in front of a judge on behalf of a client to have a suit filed in his own name against that very judge. And I gather the subject matter of the lawsuit had to do with the lawsuit against Mr. Bundy. Is that correct? In part. Was there any – Clyde and Bundy was the – excuse me, excuse me. I was not a party to that lawsuit. Clyde and Bundy was the plaintiff, not me. Well, you just told me you were the plaintiff. Did I misunderstand your answer? No, I was confused. I thought maybe you were saying it was mentioning what happened to me, okay, in my right of counsel and these other things. I was not a plaintiff. No, I was not. You can look at the suit, and I don't think it was right for the government to come forward and not explain that or give a copy to the court and imply that I was counsel in that case or that I was a party. I was not. Okay. Well, here's the question I have, and I think it's largely then been answered. What I'm concerned about is whether or not the existence of this lawsuit or the filing and then dismissal of this lawsuit might be used subsequently as a basis for a motion to Judge Navarro to recuse herself. Is that a possibility in the future? No, it will not be. It will not be. The matter in that respect is concluded. And there will be no motion for recusal based on this lawsuit having been brought? That's correct. Okay. I want to add one other thing, and that is that Mr. Hanson, even for the time that he was in the case, was not really able to effectively represent his client's body because he was very ill. It got to the point where he had to withdraw. And we did submit cases where, as Judge Bould has alluded to, where he needed a defense team. This is a very, very big case. The government claims it was complicated. Speed trial rights were overwritten as a result of that. We've got 19 defendants. And whether or not Mr. Whipple ultimately becomes Mr. Bundy's counsel, and obviously he's having issues with whether he will be, he needs a defense team. And, you know, you need numbers here. One person, a local lawyer in Nevada, and Mr. Whipple is not, he's a fine lawyer, but the staple of his practice is not criminal defense exclusively, and he runs a legal clinic and is very thin on resources. He needs the help, even if he gets in. At this point, Mr. Bundy hasn't decided whether he's getting in or not for a lot of different reasons, which, you know, Attorney Klein. But, you know, so I ask the court. It's not a question of personality. I hate to keep using the Adams analogy, but we're a country of laws and not men. That's why we have the Declaration of Independence and why we have a Constitution. It shouldn't be about our claim. It's about Cliven Bundy. And he wants me as his lawyer. He trusts me as his lawyer. He's been waiting for me to be his lawyer, and he deserves to have counsel of his choice, particularly since he's up against potential life in prison in here. And that's the bottom line. And the Supreme Court cases support that, as well as we cited a case from this court, Ninth Circuit supports that. So I respectfully ask, and, you know, I think Judge Boole knows this, had an argument recently up there. I respect your court. You're a court that, you know, worries about the little guy, not about the elite in our country. And everybody knows me as a conservative libertarian, but I'll tell you something. I'm one of the few conservatives that really appreciates what you do because you're there for the average person. A lot of courts in this country, folks who are not as sensitive to situations such as Cliven Bundy's. And so I appreciate your time. I appreciate your expediting this, too. Sincerely. Okay. Are there any further questions from the judges? I'm here. Thank you. I have no further questions, and I have no questions for Ms. White. So thank both sides for appearing in front of us on such short notice. I appreciate the argument and the time that both of you put into this. We're now adjourned, and we'll have our own conference offline. Thank you, Your Honor. Thank you.
judges: Fletcher, Gould, Bybee